Leon Cardonick v. Commissioner.
Cardonick v. Commissioner
Docket No. 2329-67.
United States Tax Court
T.C. Memo 1968-125; 1968 Tax Ct. Memo LEXIS 176; 27 T.C.M. (CCH) 601; T.C.M. (RIA) 68125; June 24, 1968, Filed *176 Leon Cardonick, pro se, 1135 Englewood St., Philadelphia, Pa. Mary Ann Hagan for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in petitioner's income taxes as follows: Addition to tax
under sec.
Year
Tax
6653(a) [1]
1959
$4,657.11
$232.86
1960
6,054.82
302.74
1961
4,516.19
231.81
After various concessions by the parties, the sole issue for decision is whether certain bank deposits made by petitioner should be included in gross income. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner is an individual taxpayer and resided in Philadelphia, Pennsylvania, at the time of the filing of the petition herein. 602 He and his wife, Sally Cardonick, who is not a party to this proceeding, filed timely joint Federal income tax returns for the years involved herein with the district director of internal revenue at Philadelphia. From 1936 until 1940, petitioner was employed as a warehouse telephone operator with Crasdale Food Products in New *177 York City. In 1940 and 1941, he was employed by Cherry and Lewis in the wholesale-retail food business in Philadelphia, Pennsylvania. In the latter part of 1941, he began operating his own grocery at 2030 South 6th Street in Philadelphia, Pennsylvania. He and his wife purchased for $3,200 the building in which the grocery was located in 1941 and sold the building in 1947 for $4,900. In 1952, petitioner began working for Garden Cash & Carry, Inc. (hereinafter sometimes referred to as Cash and Carry). Cash and Carry is a wholesale grocery outlet and a subsidiary of Perloff Brothers, Inc. From 1952 until July 7, 1961, petitioner was employed by Cash and Carry as manager and had no other jobs. During that period his wife, Sally, was unemployed. Neither petitioner nor his wife has received any inheritances or gifts other than occasional small gifts of food or housewares. In 1953, petitioner and his wife purchased their present residence at 1135 Englewood Street, Philadelphia, Pennsylvania, at a purchase price of $14,000. A down payment of $5,000 was made and the balance of the mortgage was paid in full within two years. Petitioner received salary from Cash and Carry as follows: *178 Year
Gross salary
Net salary
1952 (17 wks.)
$ 1,275
$ 1,198
1953
5,175
4,437
1954
5,852
5,152
1955
8,493
7,352
1956
9,014
7,740
1957
11,104
9,421
1958
12,173
10,281
1959
9,400
7,958
1960 14,300
11,737
Subtotal
$76,786
$65,276
1961 (5 mos.) 5,000
3,882
Total $81,786
$69,158
During the years 1952 through 1960, petitioner expended the following amounts for personal expenses: Year
Amount
1952
$ 4,005
1953
4,090
1954
3,905
1955
4,380
1956
5,010
1957
4,400
1958
4,635
1959
4,525
1960 5,060
Total
$40,010
During the years 1959, 1960, and 1961, petitioner made 27 deposits, totaling $11,241.00 in 1959, $9,748.96 in 1960, and $13,671.94 in 1961, in a checking account maintained with the First Pennsylvania Banking and Trust Company. Most of these deposits were in flat amounts, ten of $1,000, four of $2,000, three of $800, and one of $500. One deposit, on July 10, 1961, was in the amount of $4,250. The other eight deposits were in odd amounts ranging from $430.33 to $2,218.63. Petitioner had balances in the aforementioned checking accounts at the dates indicated as follows: Date
Amount
December 29, 1958
$ 5,229.89
December 30, 1959
9,844.27
December 31, 1960
11,990.01
August 7, 1961
15,806.67
*179 On April 26, 1957, petitioner opened a savings account with the Philadelphia Savings Fund Society. He made 33 deposits and three withdrawals in said account until it was closed on August 1, 1961. Of the 33 deposits, 22 were in flat amounts ranging from $300 to $2,000, and 11 were in odd amounts ranging from $85.00 to $965.53. In addition, interest was credited to the account as follows: Date
Amount
December 26, 1957
$ 30.37
December 26, 1958
84.19
December 28, 1959
132.50
December 26, 1960
420.29
August 1, 1961
326.79
The three withdrawals from the account were as follows: Date
Amount
July 14, 1961
$ 500.00
July 25, 1961
9,500.00
August 1, 1961 (to close the account)
8,333.67
The balances in the account (excluding interest credited) at the dates indicated were as follows: Date
Amount
December 31, 1957
$ 2,179.00
December 31, 1958
3,574.00
December 31, 1959
7,674.00
December 31, 1960
14,839.53
August 1, 1961
8,333.67 (final balance) 603 The total amounts deposited in said savings account during the taxable years involved herein are as follows: Date
Amount
1959
$4,100.00
1960
7,165.53
1961
2,500.00
*180 Petitioner and/or his wife had no other savings and/or checking accounts. On May 26, 1961, an inventory taken at Cash and Carry disclosed a shortage of $40,511.96. A second inventory taken on June 24, 1961 disclosed an additional shortage of $4,590.73, or a total shortage of $45,102.69. On July 10, 1961, Perloff Brothers, Inc., and Cash and Carry filed a complaint in equity against the petitioner, Leon Cardonick, and the First Pennsylvania Banking and Trust Company in Court of Common Pleas No. 7 of Philadelphia County. This suit charged, inter alia, that the funds in the petitioner's bank account in the First Pennsylvania Banking and Trust Company were in fact the property of his former employer and requested that Leon Cardonick be directed to account to his former employer for the funds received by him from the disposition of the inventory during the period of employment and that a preliminary injunction be issued restraining the defendant bank from releasing or transferring funds held by it in the individual defendant's name. On August 7, 1961, the court of common pleas refused to grant the preliminary injunction. Upon appeal from the court's refusal to grant the preliminary *181 injunction, the Supreme Court of Pennsylvania, in an opinion dated January 2, 1962, which is reported at , held that the lower court erred in denying the preliminary injunction. The case was remanded by the Supreme Court of Pennsylvania to the lower court. In the final disposition of the state court proceedings, as reflected in an amended decree of October 16, 1963, petitioner was adjudged to be a trustee ex malificio in the sum of $45,281, and a judgment in that amount, with interest from July 7, 1961, was entered in favor of Perloff Brothers, Inc., and Cash and Carry. Petitioner from time to time carried large amounts of cash and, at the time the inventory shortage was discovered on July 7, 1961, had some $6,700 in cash and $1,671 in checks in his possession. Petitioner has conceded adjustments for interest income for each of the taxable years involved herein to reflect his omission of interest credited to his account with the Philadelphia Savings Fund Society, an omitted short-term capital gain of $47.83, a dependency deduction of $600.00, and a 50 cent mathematical error for 1961. Against the aggregate bank deposits in the above-mentioned *182 checking and savings accounts during the taxable years involved herein, respondent now concedes that the following amounts have been explained and claims that the balance is unexplained and therefore includable in petitioner's gross income: Total
Claimed as
Year
Deposits
Explained
Unexplained
1959
$15,341.00
$3,956.71
$11,384.29
1960
16,914.49
4,741.76
12,172.73
1961
16,171.94
0
16,171,94
Opinion The present dispute as to the deficiencies herein stems from respondent's claims that certain unexplained bank deposits are includable in petitioner's gross income and that petitioner is liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). Respondent does not claim any additions to tax for fraud under section 6653(b). Under these circumstances, the burden of proof is wholly upon petitioner. Essentially, respondent's claim rests upon the premise that the proceedings in the Pennsylvania courts ow that petitioner had a source of income during the taxable years involved herein from the conversion of inventory of his employer. Petitioner, who was the sole witness herein, counters that *183 those proceedings do not represent the true picture. He asserts that he customarily carried large amounts which he used to cash checks as a courtesy service for customers of his employer. However, he offered no corroborating testimony as to his check-cashing service, although such testimony seemingly could easily have been made available. [2]
Petitioner further claims that he accumulated cash from savings prior to his employment in 1952 by Cash and Carry and from his earnings from Cash and Carry 604 and that the sizable amounts deposited in his bank accounts came from these sources. We think the record discloses that such could not have been the case, at least insofar as a savings out of his earnings from Cash and Carry are concerned. During the taxable years involved herein, petitioner received an aggregate in net earnings from Cash and Carry of $23,577. Against this, he had personal expenses of $4,525 in 1959 and $5,060 in 1960. The record contains no evidence of his personal expenses in 1961 but it is obvious that *184 he must have had some. If we assume that he reduced those expenses somewhat after he lost his job in July, it would appear that he should have expended at least $4,000 for such purposes during that year, or an aggregate of $13,585 for personal expenses during the three-year period. Thus, petitioner at best could have accumulated $10,000 during those years. Yet, his checking account balances not only increased by $10,576.78 during that same period but, in addition, he made deposits of $13,765.53 in his savings account against which he took no withdrawals until the very end. The aggregate of $24,342.31 is far beyond the $10,000 which petitioner could conceivably have saved from his earnings during this period. [3]
In the period 1952 through 1958, petitioner's net earnings from his employment aggregated $45,581. Against this, he *185 expended $30,425 for living expenses and at least $9,000 to pay off the mortgage on the house which was purchased in 1953, or a total of $39,425 [4] But even the $6,000 differential is not enough to account for the increase in the bank accounts during 1959 through 1961. Moreover, during the period April 26, 1957 to December 31, 1958, the balance in petitioner's savings account increased by approximately $3,600. [5]
We turn to petitioner's claim that he accumulated savings during the period prior to his employment by Cash and Carry which he retained for a long period of time in the form of cash and gradually deposited in his bank accounts in later years. We have nothing before us except petitioner's general testimony to this effect. There is nothing in the record to indicate that petitioner had sources of income in the period prior to 1952 from which he could have developed other than a minuscule hoard, if indeed he could have garnered *186 any accumulation at all. Petitioner did realize $4,900 from the sale of his property in 1947 but we have counterbalanced this by assuming that he made the $5,000 down payment on the house in 1953 from prior savings. See footnote 4, supra. While the holding of the Pennsylvania court of common pleas as to petitioner's defalcations and the testimony in connection with the application for a preliminary restraining order, which were made part of the record herein, are concededly not determinative of the issue before us, we think it was incumbent upon petitioner to produce some probative evidence to support his claim that such holding was erroneous and that the unidentified bank deposits did not come from the defalcations. This he has not done. The fabric of the record herein is too porous for us to conclude that petitioner has carried his burden of proof with respect to the asserted deficiencies - including the additions to tax under section 6653(a), as to which petitioner presented no evidence whatsoever aside from his assertions as to accumulated savings. In order to reflect the concessions of respondent as to the reduced amounts of unidentified deposits, Decision will be entered *187 under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. When the possibility of such additional witnesses was suggested to petitioner, his reply was, "They are busy people and I didn't want to bother them."↩
3. We have not taken into account other expenditures which petitioner may have made. For example, the complaint in the Pennsylvania court of common pleas alleges that petitioner purchased several blocks of securities in 1961. We have also omitted from our calculations the $8,371 in cash and checks which petitioner had in his possession on July 7, 1961.↩
4. This is on the assumption most favorable to petitioner that the $5,000 down payment came from prior savings. ↩
5. We were furnished no evidence as to whether the net balance in petitioner's checking account increased prior to December 31, 1958.↩